1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  MS AMLIN CORPORATE MEMBER, LTD, AS SOLE CORPORATE MEMBER OF SYNDICATE 2001, | Case No.:  20cv687-GPC(LL) |
| 12 | |
| 13                             Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO STAY** |
| 14  v. | |
| 15  FRANCIS BOTTINI, BOTTINI & | **[Dkt. No. 9.]** |
| 16  BOTTINI, INC., and DOES 1 through 200, | |
| 17 | |
| 18                             Defendants. | |

19
20         Before the Court is Defendants' motion to stay this insurance coverage action
21  pending resolution of two state court cases alleging legal malpractice claims against
22  them.  (Dkt. No. 9.)  Plaintiff filed an opposition and Defendants filed a reply.  (Dkt. Nos.
23  13, 14.)  The Court finds that the matter is appropriate for decision without oral argument
24  pursuant to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the Court GRANTS
25  Defendants' motion to stay.

**Background**

26         Plaintiff MS Amlin Corporate Member, Ltd. as sole corporate member of
27  Syndicate 2001 ("MS Amlin" or "Plaintiff") issued a Professional Liability Policy No.
28

1

SYN-109633 ("Policy") to Defendant Bottini & Bottini, Inc. ("Bottini & Bottini") effective October 1, 2018 to October 1, 2019. (Dkt. No. 1, Compl. ¶ 40; Dkt. No. 1-2, Compl. Ex 1.) Defendant Frank[1] Bottini, Esq. ("Mr. Bottini") is an attorney specializing in prosecuting class actions and is the owner of and employed by Defendant Bottini & Bottini. (collectively "Defendants"). (Dkt. No. 1, Compl. ¶¶ 4, 5.)

On September 6, 2019 and on March 6, 2020, Carol Costarakis ("Costarakis") and Jeremy Melton ("Melton"), respectively, filed separate complaints in San Diego Superior Court[2] against Defendants[3] for legal malpractice and related claims for their legal representation of Costarakis and Melton as class representatives in a class action complaint against their real estate broker, Pacific Pinnacle Real Estate Services, Inc., ("Pacific Pinnacle"), a title insurance and settlement services company, Fidelity National Financial, Inc. ("Fidelity") and related entities, *Melton v. Pacific Pinnacle Real Estate Servs., Inc*., Case. No. 37-2014-00043632-CU-BT-CTL, S.D. Super. Ct. filed on December 29, 2014. (Dkt. No. 1, Compl. ¶¶ 21, 23; Dkt. No. 1-6, Compl., Ex. 5; Dkt. No. 1-9, Compl., Ex. 8).

Costarakis, on January 31, 2015, and Melton, on December 22, 2014, both signed Engagement Agreements with Defendants to serve as class representatives in a class action. (Dkt. No. 1, Compl. ¶¶ 10, 26; Dkt. No. 1-3, Compl., Ex. 2; Dkt. No. 1-7, Compl., Ex. 6.) Both Engagement Agreements provided that Bottini & Bottini would

---

[1] The Court notes that the caption names the Defendant as Francis, not Frank Bottini.

[2] Defendants filed a request for judicial notice of the two state court actions filed by Costarakis and Melton. (Dkt. No. 9-2.) Because state court dockets are subject to judicial notice and no opposition has been filed, the Court GRANTS Defendants' request for judicial notice. *See Lee v. Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("matters of public record" subject to judicial notice); Fed. R. Evid. 201(b)(2) ("court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[3] *Carol Costarakis v. Francis Bottini, Jr.,* Case No. 37-2019-00047099-CU-PN-CTL and *Ronald G. Brown Trustee of the Bankruptcy Estate of Jeremy R Melton v. Francis Bottini, Jr*., Case No. 37-2020-00012491-CU-PN-CTL.  In the state case, Jeremy Melton is named Ronald G. Brown, Trustee of the Bankruptcy Estate of Jeremy R. Melton.

"prosecute the action on a contingency fee basis, which means you will have no responsibility for legal fees and expenses . . . If there is no recovery, there will be no fees or expenses due or payable to you." (Dkt. No. 1-3, Compl., Ex. 2; Dkt. No. 1-7, Compl., Ex. 6.) Costarakis claims the real estate transaction was subject to an arbitration provision as well as an attorneys' fee provision and neither were disclosed to her. (Dkt. No. 1, Compl. ¶ 11.) Melton alleges that Defendants failed to advise him of the risks of class action litigation, his role as a class representative or having a substantial award of attorneys' fees and costs entered against him. (Dkt. No. 1, Compl. ¶ 27.)

During the class action litigation around September 25, 2015, the state court granted Pacific Pinnacle's motion to compel arbitration of Costarakis' and Melton's individual claims due to the arbitration provision in the real estate purchase agreements and the court stayed the class action without ruling on Fidelity's motion to compel arbitration. (Dkt. No. 1-6, Compl., Ex. 5, Costarakis' Compl. ¶ 27.) The Costarakis' complaint alleges that around November 9, 2015, Defendants dismissed the class action without prejudice and initiated arbitration proceedings on June 3, 2016. (*Id.* ¶¶ 28, 29.)

While their cases were in arbitration, Costarakis and Melton received emails from Bottini & Bottini confirming that they would not be responsible for any fees in the event the arbitrator ruled against them. As to Costarakis, around November 29, 2016, she sent an email to Mr. Bottini expressing concerns about the risks in the litigation and Mr. Bottini responded the same day stating,

> the arbitration is against Pacific Pinnacle and its owners (George Gilman and Dale Burgett) as well as Fidelity. If we prevail, Pacific Pinnacle and Fidelity would pay any recovery you receive. However, if we would dismiss the case now, before trial, we would be liable for their costs and fees since they would be the prevailing party. So, I strongly urge you to stay the course and complete the arbitration . . . As we have discussed, if for any reason the arbitrator does not rule in your favor at the arbitration we would pay any related costs or fees.

(Dkt. No. 1, Compl. ¶ 15; Dkt. No. 1-4, Compl., Ex. 3.) As to Melton, he received an email dated September 29, 2016, from Yury Kolesnikov, an attorney at Bottini & Bottini

stating, "However, as [Mr. Bottini] previously indicated, to the extent that we do not prevail in arbitration and there are any costs and fees awarded to Defendants, we will pay those costs and fees as provided in our retention agreement." (Dkt. No. 1, Compl. ¶ 29; Dkt. No. 1-8, Compl., Ex. 7.) Melton further asserts that Mr. Bottini and/or other attorneys at the firm made other similar representations, both orally and in writing, that they would pay any award of attorneys' fees against Melton. (Dkt. No. 1, Compl. ¶ 31.)

On January 26, 2017, Mr. Bottini wrote an email to Costarakis and Melton,

> Hello Jeremy and Carol. I am attaching the Arbitrator's decision. Unfortunately, he did not rule in our favor, for the reasons set forth in the attached decision. I am sorry that we did not obtain a favorable result for you, but appreciate your participation in the case. As per our agreement, if the Arbitrator subsequently awards any fees or costs to Respondents, my firm will pay any such fees or costs on your behalf. Thanks.

(Dkt. No. 1, Compl. ¶ 16; Dkt. No. 1-5, Compl., Ex. 4.) In October 2017, judgment was entered against Costarakis and Melton which included $1,300,895.67 in attorneys' fees and costs. (Dkt. No. 1, Compl. ¶ 18; *id.* ¶ 33[4].) The Court of Appeal affirmed the amount on May 23, 2019. (Dkt. No. 1, Compl. ¶ 18.) Due to this judgment, Costarakis and Melton filed separate complaints in state court against Defendants for professional negligence and related causes of action based on their understanding that Defendants would cover all attorneys' fee and costs as provided in the Engagement Agreements between them as well as in email correspondences.

## A.    Defendants' Insurance Application

Bottini & Bottini applied for professional liability insurance on September 27, 2018. (Dkt. No. 1, Compl. ¶ 37; Dkt. No. 1-10, Compl., Ex. 9.) Questions 30(a) and 30(c) asked, "After inquiry, is the applicant, its predecessor firms or any lawyer proposed

---

[4] Melton alleges the judgment was in excess of $1,600,000. It appears he may have included daily interest that had been accruing.

1  for this insurance aware of: [a] any circumstance, act, error, omission or personal injury

2  which could be the basis of a claim or suit?" and [c] any adverse judgment that

3  could be the basis of a claim or suit?" (Dkt. No. 1, Compl. ¶¶ 37-39; Dkt. No. 1-10,

4  Compl., Ex. 9 at 4.[5])  Mr. Bottini answered both questions in the negative. (Dkt. No. 1-

5  10, Compl., Ex. 9 at 4.)  Based on these answers, MS Amlin and the other Policy

6  underwriters insured Bottini & Bottini, for the October 1, 2018 to October 1, 2019 policy

7  period. (Dkt. No. 1, Compl. ¶ 40.)

8      Exclusion M of the Policy excludes any claim "based upon, arising out of, or

9  attributable to any fact, circumstance or situation, which, prior to the inception date of the

10 Policy, any INSURED knew or reasonably should have known might give rise to a

11 CLAIM." (*Id.* ¶ 43.)  In addition, the Policy's CONDITIONS [D] provides that "[t]he

12 INSURED shall not, without prior written consent of the Underwriters, make any

13 payment, admit liability, settle any CLAIM, assume any obligations, agree to mediation,

14 arbitration or any similar means of resolution of any dispute, waive any rights or incur

15 any CLAIMS EXPENSES on behalf of the Underwriters." (*Id.* ¶ 44.)

16     On October 8, 2018, Costarakis' counsel reached out to Defendants stating that

17 Costarakis had retained the law firm to assist her concerning the judgment issued against

18 her and whether they would be amendable to a tolling agreement for her claims of

19 professional negligence against them and sought confirmation that Defendants'

20 professional liability carrier had been put on notice and would approve the tolling

21 agreement given the pending appeal. (*Id.* ¶ 19.)  Around October 15, 2018, Defendants

22 tendered this matter to MS Amlin and the other Policy underwriters. (*Id.* ¶ 20.)  When

23 Defendants were subsequently served with the Costarakis complaint, they asserted they

24 were entitled to *Cumis* counsel and MS Amlin agreed to recognize the Klinedinst firm as

25 Defendants' independent counsel pursuant to an updated reservation of rights and have

26

27 _____

28 [5] Page numbers are based on the CM/ECF pagination.

been providing a defense for the Potential Claim and the litigation by Costarakis.  (*Id.* ¶ 24.)  Later, when the Melton state court complaint was filed, Defendants, through Klinedinst, tendered the Melton Action to MS Amlin and the other Policy underwriters around March 9, 2020.  (*Id.* ¶ 34.)  The Melton Action and the Costarakis Action constitute a single claim under the Policy.  (*Id.* ¶ 35.)

In this complaint, Plaintiff seeks a declaration that it has no duty to defend or indemnify based on Exclusion M due to Defendants' failure to disclose known claims or potential claims on the application.  (*Id.* ¶ 48.)  Second, it alleges it has no duty to defend or indemnify due to Defendants' assumption of liability without the prior written consent of MS Amlin and the other Policy underwriters in violation of the Conditions D to the Policy.  (*Id.*)  Third, it claims it has no duty to defend or indemnify because the Claim was not first made during the Policy.  (*Id.* ¶ 49.)  Plaintiff also seeks reimbursement of all defense costs and fees incurred by MS Amlin in defending the underlying actions.  (*Id.* ¶¶ 54-56.)

Defendants now move to stay the case pending resolution of the underlying litigation due to overlapping facts that could result in inconsistent rulings.  Plaintiff disagrees contending that the facts do not overlap and the issues in this case are pure questions of law.  Alternatively, in the event the Court is inclined to stay the case on the interpretation and effect of Defendants' emails and agreements, Plaintiff asks that the Court should only partially stay the matter on that issue and allow the remaining issue to be litigated.

## Discussion

### A.    Legal Standard on Motion to Stay

Defendants move to stay the case pending the Costarakis and Melton litigation currently pending in the state court citing to the Court's inherent power to stay under *Landis v. N. America Co.*, 299 U.S. 248, 254 (1936), and as to insurance disputes, citing to the California Supreme Court in *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 290-91 (1993) ("*Montrose I*") holding that the court has discretion to stay a case to avoid

the risk of inconsistent factual determinations that could prejudice the insured in the underlying state court actions.  In response, Plaintiff acknowledges that there is "some confusion in the courts" as to which standard applies but argues that since there is substantial overlap between both standard, the conclusion should be the same.  (Dkt. No. 13 at 9.)

District courts are divided as to whether the *Landis* or *Montrose* standard applies to a motion to stay a declaratory relief action in a coverage action involving pending state court litigation.  *Compare Zurich Am. Ins. Co. v. Omnicell, Inc*., Case No. 18cv5345-LHK, 2019 WL 570760, at *4 (N.D. Cal. Feb. 12, 2019) (applying *Landis* because federal procedural law governs diversity cases); *Nat'l Union Fire Ins. Co. v. Rudolph and Sletten, Inc*., 20cv810-HSG, 2020 WL 4039370, at *7 (N.D. Cal. July 17, 2020) (same) *with Philadelphia Indem. Ins. Co., v. Skating Edge, Inc*., No. 18cv126 SVWPJW, 2018 WL 5099705, at *2 (C.D. Cal. May 24, 2018) (applying *Montrose* because in a diversity case, state law applies); *Attain Specialty Ins. Co. v. 20 Parkridge, LLC*, No. 15CV212, 2015 WL 2226356, at *5 (N.D. Cal. May 11, 2015) (applying *Montrose*).  However, because there is overlap in the elements to satisfy both standards, the Court need not determine which standard to apply.  *See Aspen Am. Ins. Co. v. Ou*, CV 18-2312 DSF (GJSx), 2019 WL 1950293, at *6 (C.D. Cal. Mar. 14, 2019) (evaluating *Landis* doctrine which encompasses the factors in *Montrose I* and *II*).  Accordingly, the Court considers the *Landis* factors which incorporates the *Montrose* factor on the second prejudice factor. *See Zurich Am. Ins. Co.*, 2019 WL 570760, at *4 ("*Landis*, which is federal procedural law . . . governs the instant motion," but "[n]onetheless, state law can still be informative, and the Court discusses *Montrose* when weighing the second *Landis* factor below.").

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936); *see also Dependable Highway Express, Inc. v. Navigators Ins. Co*., 498 F.3d 1059, 1066 (9th Cir. 2007).  Among the competing interests to be weighed when considering a stay are

"[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (*citing Landis*, 299 U.S. at 254-55). "The proponent of a stay bears the burden of establishing its need." *Landis*, 299 U.S. at 255; *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

In *Montrose*, the California Supreme Court explained that "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *Montrose,* 6 Cal. 4th at 301 ("*Montrose I*"). Ways that an insured might be prejudiced by concurrent litigation include the following: (1) the insurer might "join forces with the plaintiffs in the underlying actions as a means to defeat coverage"; (2) the insured might be "compelled to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers"; and (3) "the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage." *Montrose Chem. Corp. v. Superior Ct.*, 25 Cal. App. 4th 902, 910 (1994) ("*Montrose II*"). "A stay is *required* in the first and third type of prejudice involving factual overlap." *United Enter., Inc. v. Superior Ct.*, 183 Cal. App. 4th 1004, 1012 (2010) (emphasis in original). Otherwise, "the question whether to grant a stay or fashion some other remedy is left to the discretion of the trial court." *Id.*

**B.   *Landis* Factors**

**1.      Possible Damage from Granting a Stay**

The Court first considers the possible damage to Plaintiff if the Court were to grant the stay. Plaintiff argues that it has been defending the underlying contentious actions

8

"with no end in sight" and the $1.3 million at issue, which continues to grow daily, is in excess of the Policy limits.  (Dkt. No. 13 at 14.)  Second, once this underlying litigation is resolved with a substantial payment of the judgment by Defendants, Plaintiff will have to litigate this matter at further expense.  (*Id.*)  Finally, based on the undisputed facts, it is clear this Court will ultimately decide there is no coverage due to the failure to disclose known potential claims; therefore, it would not be fair to stay the case.  (*Id.* at 15.)

Arguments concerning defense costs have been rejected by courts to support any prejudice to the non-moving party on a motion to stay.  In fact, the Ninth Circuit has stated that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."  *Lockyer v Mirant Corp*., 298 F.3d 1098, 1112 (9th Cir. 2005).  "[D]elaying a determination of whether an insurer owes an insured party coverage does not substantially harm the insurer."  *Nat'l Union Fire Ins. Co*., 2020 WL 4039370, at *8 (quoting *RLI Ins. Co. v. ACE American Ins. Co.,* Case No. 19-CV-04180-LHK, 2020 WL 1322955, at *4 (N.D. Cal. Mar. 20, 2020)).  "[A]dvancing defense costs 'is part of an insurer's obligation and costs of doing business.'"  *Id*.; *see also United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*, No. 15-CV-01039-HSG, 2016 WL 1534885, at *2 (N.D. Cal. Apr. 15, 2016) (rejecting an insurer's argument that a stay would cause the insurer harm).  Moreover, as part of the complaint, Plaintiff seeks reimbursement of all defense costs and fees expended.  (Dkt. No. 1, Compl. ¶¶ 54-56.)  Therefore, if the insurer prevails, the amount of money the defense will expend will be protected by the reimbursement claim.  *See RLI Ins., Co.,* 2020 WL 1322955, at *4 ("the Court and other courts in this district have held that the ability of an insurer to recover for continued defense weighs against finding that a stay harms the insurer.").  Finally, Plaintiff's final argument that it will ultimately prevail so the case should not be stayed is not tenable as the Court cannot make a ruling on the merits at this stage.  Therefore, the possible damage alleged by Plaintiff if a stay were imposed do not support a stay.

/ / /

20cv687-GPC(LL)

### 2. Prejudice a Party May Suffer in Denying a Stay

Second, the Court considers any prejudice that Defendants may endure if the case were to proceed.  Defendants argue that there are disputed issues of fact in this case that overlap with disputed issues of fact in the underlying state court actions.  They also contend that if this case is not stayed, they would have to litigate a "two-front war" litigating in both the state court and federal forum and any ruling on the interpretation of the Engagement Agreements and the emails at issue would be subject to collateral estoppel in the state court actions.  (Dkt. No. 9-1 at 16-20.)  In response, Plaintiff argues the issues in this case are ones of pure contract interpretation and there is no overlap of the facts in the cases because the issues of whether Defendants were aware of facts when it applied for the Policy that might result in the underlying plaintiffs' claims against them and the question of whether the emails and the Engagement Agreements constitute an assumption of liability are not issues in the underlying state court actions.  It avers that Defendants conflate whether they knew or should have known of a fact, circumstance or situation which might result in a claim with whether the underlying claims in the state court are meritorious.  (Dkt. No. 13 at 11.)  In reply, Defendants argue that the interpretation of the Engagement Agreements and subsequent emails is determinative of whether they knew or should have known that a potential claim by Costarakis and Melton could arise against them.

In the underlying litigation, Costarakis and Melton allege that Bottini & Bottini breached the Engagement Agreements by failing to pay the judgment or indemnify them for the attorneys' fee and costs awarded against them in the arbitration proceedings. (Dkt. No. 1-6, Compl., Ex. 7, Costarakis Compl. ¶¶ 51-56; Dkt. No. 1-9, Compl., Ex. 10, Melton Compl. ¶¶ 23-27.)   In their defense, Defendants deny that the provisions of the Engagement Agreements apply to the arbitration proceedings arguing they only applied to the class action.  Defendants also deny that their emails promised to indemnify

Costarakis and Melton[6] for any attorneys' fees award against them in the arbitration because any alleged promises were illusory since they had no obligation to pay an adverse judgment.  They argue that the Engagement Agreements were never modified to include the arbitration and the alleged promises were not supported by consideration.[7] (Dkt. No. 9-1 at 8-9.)

These same arguments by Defendants are being made in the instant action.   (Dkt. No. 9-1 at 11-12.)  They dispute what Mr. Bottini agreed to in the Engagement Agreements and what he allegedly promised to his clients and whether they are enforceable.[8]  If the Court in the instant action concludes that Defendants knew or reasonably should have known that the arbitration judgment could be the basis for a claim or lawsuit when they applied for the insurance policy, it necessarily implies that the arbitration proceeding was subject to the terms of the Engagement Agreements, an issue currently disputed in the underlying litigation.  Similarly, if the Court were to conclude that the emails constitute an admission of liability, that would impact the defense in state court that the emails were illusory promises and unenforceable.  Therefore, the Court concludes that key issues in this case overlap with key issues in the underlying state court actions.

The case of *OneBeacon* is supportive.  In that case, the law firm defendants represented Argonaut Insurance Company ("Argonaut") to represent its interest in a workers' compensation claim before the Workers Compensation Appeals Board ("WCAB") in the *Nunez* matter.  *OneBeacon Ins. Co. v. Parker, Kern, Nard & Wenzel*,

---

[6] Defendants claim that Melton testified at his deposition that he understood he was liable for any fee or costs awards in the arbitration if he did not prevail but fail to provide any evidence to support his this assertion.

[7] It is not clearly stated but it appears that these arguments are being used as defenses in the underlying litigation.

[8] As noted by Defendants, there is no "smoking gun" or direct evidence that Defendants knew that the arbitration proceeding might give rise to a claim at the time they applied for insurance on September 27, 2018.  At that time, the arbitration judgment was pending with the Court of Appeal until May 23, 2019.

11

No. 1:09–cv–00257 AWI GSA, 2009 WL 2914203, at *1 (E.D. Cal. Sept. 9, 2009).  On March 5, 2007, the judge before the WCAB ruled against Argonaut noting that it had not offered any rebuttal evidence to the claimants' expert testimony about medical onions concerning in-home care assistance.  *Id.*  On May 23, 2007, the law firm submitted an application for professional liability insurance and the law firm indicated that it was not aware of any incidents, acts or omissions that may result in a claim and made a similar statement at renewal on May 14, 2008.  *Id.*  On July 8, 2008, Argonaut sued the law firm in California state court for legal malpractice arising from the representation in the *Nunez* workers compensation case.  *Id.*  On February 9, 2009, the law firm's insurer filed a complaint in federal district court seeking rescission of the policy and a declaratory judgment based on the law firm's failure to disclose a potential suit by Argonaut when the law firm applied for the policy and renewed the policy.  *Id.*  The law firm moved to stay the professional liability insurer's suit for rescission/declaratory judgment and the court granted the motion under the "needless determination of state law issues" *Brillhart*[9] factor.  *Id.* at *7.  The district court reasoned that the question of whether the law firm committed legal malpractice involved the issue of whether the law firm should have retained an expert in the *Nunez* case which was disputed by the parties.  *Id.* at 4-5.  The law firm contended that while the *Nunez* case was pending, Argonaut knew the law firm did not intend to present an expert to rebut the claimant's expert's testimony with respect to the issue of home care and that Argonaut made the decision not to retain an expert to rebut the claimant's expert's testimony.  *Id.* at *5.  Argonaut challenged the law firm's contentions.  *Id.*  The court stated, "[i]n order to make a determination regarding the legal malpractice alleged in the underlying action, it will be necessary to address what Defendants here believed were their responsibilities with regard to retaining an expert for the *Nunez* WCAB matter."  *Id.*  The court held that the question of whether the law firm

---

[9] *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495 (1942).

was negligent in failing to present an expert in the underlying case was "clearly related to whether or not Defendants' responses to the application and renewal questions concerning potential claims were reasonable, or whether the responses constituted material representations." *Id.* Similarly, in this case, whether Defendants breached the Engagement Agreements and committed legal malpractice in the underlying state court proceedings are related to how Defendants answered the questions in the application concerning potential claims.

In contrast, Plaintiff cites to cases that are inapposite as the defendants in those cases did not challenge the underlying facts that supported a claim for coverage. In *Evanston Ins. Co. v. Russell Assocs.,* Case No. CV 07–04007 AHM (SSx), 2008 WL 11342976, at *3 (C.D. Cal June 3, 2008), the plaintiff insurer filed a declaratory relief action against the insured for rescission, reimbursement of defense fees and a judicial declaration as to its duty to defend or indemnify them in the underlying actions. *Id.* at *1. Defendant landlord moved to stay the case pending resolution of the two state court cases filed against him by tenants for numerous causes of action related to uninhabitable conditions such as breach of the warranty of habitability, negligent maintenance of the property, violations of the Los Angeles Municipal Code, and other related claims. *Id.* In contrast, Plaintiff's complaint alleged that in the defendants' applications for both Evanston insurance policies, they "misrepresented and concealed material information," including the cancellation of another policy by their prior insurer and notice from the City of Los Angeles of deficiencies at the property that could give rise to a lawsuit and fraudulently procured insurance policies. *Id.* at *3. The Court denied the stay noting that in the declaratory relief action, the court did not have to make a decision on whether the tenant properties were inhabitable but only whether "Defendants were aware of and failed to disclose such allegations when the Russell Defendants applied for insurance coverage." *Id.* In contrast to the instant case, the defendants in *Evanston Ins. Co*. did not dispute the alleged misrepresentation or concealment of material information in the insurance applications.

1    Similarly, in *Mt. Hawley Ins. Co. v. Bay Valley Sec. LLC*, Case No. 19-cv-04423-

2    RS, 2019 WL 9834335 (N.D. Cal. Dec. 12, 2019), the district court denied a stay because

3    the coverage case presented issues that were factually and legally "logically unrelated" to

4    the matters being litigated in the underlying suit. *Id.* at *2. The question in the case was

5    whether there were material misrepresentations and/or omissions that void the insurance

6    policy when the defendant wrote in the application that it was a one-person company and

7    provided only unarmed "visual deterrent" security services, while in the underlying

8    action, the issue was whether a third party suffered physical and emotional injuries by the

9    defendant's employee when he used a taser. *Id.* at *1-2. In the coverage action, the

10   plaintiff had to prove that at the time the insurance application was submitted, the

11   defendant was not a one-person company that provided only unarmed "visual deterrent"

12   security services, limited to observing and reporting which did not overlap with issues in

13   the underlying state court personal injury action. *Id.* at *2. The defendant did not

14   challenge that at the time of application it was a one-person company but challenged

15   whether the perpetrator was an employee at the time of the incident. *Id.*

16   Finally, in *Scottsdale Ins. Co. v. Grant & Weber*, Case No. CV–16–610–MWF

17   (AJWx), 2016 WL 7469636, at *4 (C.D. Cal. Apr. 21, 2016), the court denied dismissal

18   and stay of action pending state court litigation because the issues in the declaratory relief

19   action did not turn on the truth of the allegations in the demand letters. *Id.* The plaintiff

20   was using the demand letters to show that the underlying action constituted a claim

21   known before the policy period and the defendants knew of acts that could give rise to a

22   claim. *Id.* But, in the underlying complaint, the demand letters were being used as

23   background information and contemporaneous evidence of the defendants' alleged

24   misconduct. *Id.* Therefore, the court concluded that disputed issues in the case did not

25   overlap with the underlying action. In this case, Defendants dispute the interpretation of

26   the Engagement Agreements and emails and whether they could have been reasonably

27   understood to give rise to a claim.

28

20cv687-GPC(LL)

Defendants have demonstrated that they will be "compelled to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers"; and they may be "collaterally estopped from relitigating any adverse factual findings in the third party action." *See Montrose II*, 25 Cal. App. 4th at 910.  Thus, because of the overlap between the disputed facts in this action and in the state court action, Defendants have demonstrated prejudice to support a stay.

### 3.   Orderly Administration of Justice

Finally, the third *Landis* factor requires the Court to assess the orderly administration of justice that will be served by a stay.  As described above, because there are disputed factual issues that overlap with the state court proceedings, this factor weighs in favor of a stay.  *See Nat'l Union Fire Ins. Co*., 2020 WL 4039370, at *8. Avoiding inconsistent rulings promote judicial efficiency and support a stay and developing the facts in state court will assist the Court once the coverage issues are decided.  Accordingly, the final *Landis* factor supports a stay.

Having fully considered the *Landis* factors, the Court GRANTS Defendants' motion for a stay.

### Conclusion

Based on the reasoning above, the Court GRANTS Defendants' motion to stay the case pending resolution of the state court actions.  The parties shall notify the Court within five days of resolution of both the *Melton* and *Costarakis* actions.  The hearing set on October 16, 2020 shall be **vacated**.

IT IS SO ORDERED.

Dated:  October 8, 2020

Hon. Gonzalo P. Curiel
United States District Judge

15